1

2

3                                              O

4                                          JS - 6

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  KEITH LAKE, individually and   )  Case No. CV 06-08055 DDP (SHx)
    as a representative of the     )
12  class defined,                 )  **ORDER GRANTING MOTION FOR SUMMARY**
                                    )  **JUDGMENT AND DENYING ATTORNEYS'**
13                      Plaintiff,  )  **FEES**
                                    )
14      v.                          )  [Motion filed on October 9, 2007]
                                    )
15  LEROY BACA; LARRY WALDIE;       )
    SHAUN MATHERS; DEPUTY           )
16  McKNIGHT; DEPUTY LAING,         )
                                    )
17                      Defendants. )
    _____ )

18

19      This matter comes before the Court on Defendant's motion for

20  summary judgment.  After reviewing the materials submitted by the

21  parties and considering the arguments therein, the Court grants the

22  motion.

23  **I.    BACKGROUND**

24      Plaintiff Keith Lake alleges that he was over-detained in the

25  Los Angeles County Jail system for approximately 12-15 days on or

26  about January 4, 2005 to on or about January 19, 2005 in violation

27  of his Fourth and Fourteenth Amendment rights.  (Compl. ¶¶ 15-16.)

28  Plaintiff is suing Sheriff Leroy Baca, Larry Waldie, Shaun Mathers,

1  Deputy McKnight, and Deputy Laing on behalf of himself and a

2  purported class of similarly situated individuals.

3      Plaintiff filed his original Complaint against Defendants in

4  their individual and official capacity on December 18, 2006, and an

5  amended complaint on March 12, 2007, alleging four causes of

6  action.  On May 18, 2007, the Court granted in part and denied in

7  part Defendants' motion to dismiss Plaintiff's First Amended

8  Complaint ("FAC") pursuant to Federal Rule of Civil Procedure

9  12(b)(6) as to two claims.  On August 30, 2007, the Court further

10  granted in part and denied in part Defendants' motion to dismiss

11  Plaintiff's FAC pursuant to Federal Rule of Civil Procedure

12  12(b)(3) as to one of the two remaining claims.

13      Defendants now move the Court for summary judgment as to the

14  Plaintiff's final claim that his over-detention was caused by an

15  unconstitutional policy, practice or custom, and requests

16  attorneys' fees.

17  **II.  LEGAL STANDARD**

18      Summary judgment is appropriate where "the pleadings,

19  depositions, answers to interrogatories, and admissions on file,

20  together with the affidavits, if any, show that there is no genuine

21  issue as to any material fact and that the moving party is entitled

22  to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A

23  genuine issue exists if "the evidence is such that a reasonable

24  jury could return a verdict for the nonmoving party," and material

25  facts are those "that might affect the outcome of the suit under

26  the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

27  248 (1986).  In adjudicating a motion for summary judgment, the

28

2

1   court must draw all reasonable inferences in favor of the nonmoving

2   party.  Id. at 255.

3        This suit is brought against the Defendants in their official

4   capacities under 42 U.S.C. § 1983 for violating the Plaintiff's

5   Fourth and Fourteenth Amendment rights to be free from unreasonable

6   seizure.  To establish liability against the named Defendants,

7   Plaintiff must show that: 1) Defendants act as lawmakers whose

8   edicts may fairly be said to represent official policy and 2) that

9   action pursuant to this official policy caused the constitutional

10  tort.  Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978).

11  To establish that a violation occurred due to a policy, Plaintiff

12  must demonstrate that the violation occurs with "sufficient

13  duration, frequency and consistency."  Avalos v. Baca, 517 F. Supp.

14  2d. 1156, 1163 (C.D. Cal. 2007)(internal quotations/citations

15  omitted).  Deliberate indifference can constitute a policy.  See

16  Oviatt v. Pierce, 954 F.2d 1470, 1474 (9th Cir. 1992).

17  **III.   DISCUSSION**

18       A.   UNCONSTITUTIONAL POLICY, PRACTICE OR CUSTOM OF OVER-
             DETENTION
19

20       Plaintiff alleges that Defendants have a policy, practice, or

21  custom of over-detaining inmates for 24-48 hours in violation of

22  their Fourth and Fourteenth Amendment rights to be free from

23  unreasonable seizure.  Defendants argue that there is no such

24  policy, practice, or custom because during the two and a half years

25  prior to Plaintiff's alleged over-detention, less than .03% of all

26  the inmates released were over-detained by the Los Angeles

27  Sheriff's Department ("LASD").  Defendants point to Mortimer v.

28  Baca and Avalos v. Baca, in which this Court granted motions for

1  summary judgment against plaintiffs on facts that are almost
2  identical to this case, reasoning that such small percentages of
3  occurrences of over-detentions are not of sufficient duration,
4  frequency, or consistency to constitute a policy.  See Avalos v.
5  Baca, 517 F. Supp. 2d at 1164; Mortimer v. Baca, 478 F. Supp. 2d
6  1171 (C.D. Cal. 2007).  The instant case is based on the same class
7  of Defendants and the same Los Angeles County Jail as those in
8  Mortimer and Avalos.  Plaintiff's counsel also represented the
9  plaintiffs in Mortimer and Avalos.  All evidence that Plaintiff
10 relies on in the instant case has already been produced and
11 analyzed in Mortimer and Avalos.  Id.   Therefore, Plaintiff may
12 only defeat summary judgment if he can distinguish this case from
13 Mortimer and Avalos.

14      In Mortimer, the class included "all LASD detainees who were
15 not released within twelve hours of either (a) the expiration of
16 the applicable sentence or (b) a court-ordered release, and who
17 have no outstanding releases, warrants, or hold," and was limited
18 to the time period extending from November 23, 2002 to May 25,
19 2005.  See Mortimer, 478 F. Supp. 2d at 1173.  The Court found that
20 LASD had released nearly 51,000 individuals during the class period
21 and that only 43 were potential over-detentions.  Id. at 1179.  The
22 Court also detailed the steps LASD had taken to reduce the number
23 of over-detentions such as the "courthouse release program" and
24 "early release program."  Id. at 1176.  Finally, evaluating the
25 statistical evidence presented by the Plaintiffs and Defendants,
26 the Court concluded that the numbers of over-detentions
27 dramatically decreased between the years 1997 and 2004.  Id. at
28 1175.  This Court therefore held that approximately 0.1% rate of

4

1  over-detention, coupled with the success of programs initiated to

2  decrease percentages of potential over-detentions, was "reasonable

3  and cannot constitute a Monell deliberate indifference claim."

4  Id., at 1179.

5        Avalos involved a class (1) who were over-detained in the L.A.

6  County Jail system, (2) whose over-detentions were recognized by

7  LASD officials, and (3) who were fraudulently, oppressively,

8  extortionately, or with threats were duped into compromising their

9  monetary claims for sums far less than those claims were worth.

10 Avalos v. Baca, 517 F. Supp. 2d. at 1161.  The class period in

11 Avalos was between 2000 and 2005.  Id.  Based on the evidence from

12 Mortimer, upon which Plaintiff relied, the Court found that LASD

13 released approximately 20,000 individuals per year between 2000 and

14 2005 and that only 459 total over-detentions occurred during this

15 six year period, approximately 77 per year.  Id. at 1161.  This

16 results in an approximately 0.4% rate of over-detention.  Id.

17 Comparing this 0.4% rate to the 0.1% rate that the Court held could

18 not constitute a Monell claim in Mortimer, the Court held that

19 Plaintiff had not justified the minimal numerical differences

20 between Mortimer and Avalos as material or shown that they amounted

21 to an unconstitutional practice, policy or custom.  Id.  The Court

22 also reiterated that LASD had taken steps to reduce the number of

23 over-detentions such as the "courthouse release" and "early

24 release" programs.  Id. at 1162.  Finally, the Court found that in

25 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, the number of

26 over-detentions was 607, 495, 269, 249, 123, 81, 66, and 49,

27 respectively, and held that this reflects dramatic decreases and a

28 significant downward trend.  Id. at 1161.  Therefore, the Court

held that there was no triable issue of material fact with respect to the reasonableness of the Sheriff's implementation of the policies that resulted in over-detention.  Id. at 1163.

In the present case, Plaintiff Lake attempts to distinguish Mortimer and Avalos by alleging that Defendants routinely fail to record over-detentions that last between 24 and 48 hours.  He argues that this practice skews and dramatically reduces the number of over-detentions recorded by the Los Angeles Sheriff's Department ("LASD") that the Court relied on in Mortimer and Avalos.  He argues that this discrepancy is evidenced by the surprisingly small number of Release and Settlement Agreements[1] between the LASD and inmates who were over-detained between 24 and 48 hours during 2000 to 2005.

Plaintiff's counsel made this same argument in Mortimer.  See Mortimer, 478 F. Supp. 2d at 1178-79.  The Court in Mortimer found that the "relatively low number of twenty-four to forty-eight hour overdetentions is logical when the In-Court Release and Greenband Program as well as the early release program are added to the equation."[2]  Id.  Plaintiff argues that virtually no twenty-four to

_____

[1] When an inmate is over-detained, Plaintiff has the option of entering a Release and Settlement Agreement to settle his over-detention claim against LASD.  LASD records every such settlement as a matter of policy.

[2] The In-Court Release and Greenband Program was implemented in May 2001 in all 49 Los Angeles County Courthouses.  See Mortimer, 478 F. Supp. 2d. at 1176.  The program is a process that expedites court- ordered releases by staffing deputies whose primary job is to review an inmate's documents for wants or holds and to check if the inmate is required to provide a DNA sample or submit to a medical or mental evaluation prior to release.  Id.  If there is such a requirement, the inmate is identified with a green wristband to expedite the process, and is known as a Greenband inmate.  Id.  The Early Release Program identifies inmates whose sentences expire within three days.  Id.  Inmates released pursuant to this program are often released at least 24 hours before
(continued...)

forty-eight hour over-detentions were recorded prior to the
implementation of these programs.  According to Plaintiff, this
suggests that the low number of recordings is not logical at all,
but instead evidences a routine failure to record.  Therefore, the
statistics generated by Defendants "cannot be relied upon to
determine whether or not there is a custom and practice of over-
detaining inmates."  (See id. at 21; see also DMSJ at 9.)

    Plaintiff then attempts to generate statistics that he asserts
are more accurate.  Plaintiff disputes Defendants' claim that
between November 23, 2002 through May 25, 2005, 165 inmates were
over-detained out of 473,712 total inmates who were released.
(DMSJ at 7.)  Plaintiff argues that roughly 125,000 inmates were
released pursuant to an early release program and cannot be counted
as potential over-detainees.  (Id.)  He further argues that 3,000-
4,000 inmates are released by the In-Court Release and Greenband
Program on a monthly basis, which account for approximately another
90,000 inmates who cannot have been over-detained.  (Id.)
Therefore, Plaintiff argues that 165 inmates were over-detained out
of only about 260,000 potential detainees.  (Id.)

    The Plaintiff does not provide any evidence of the precise
number of in-court releases or early releases.  Therefore, it is
not clear how he arrives at the number 260,000.  However, even
assuming that his figures are accurate, the over-detentions would
still only account for 0.06% of all possible over-detentions.  This
is less than the 0.1% of over-detentions that this Court held was
not sufficient to constitute a Monell deliberate indifference claim
in Mortimer.  See Mortimer, 478 F. Supp. 2d. at 1179.  This is also

---

[2](...continued)
expiration of sentence.  Id.

1  less than the 0.4% rate in <u>Avalos</u> that the court found materially
2  indistinguishable from the 0.1% rate in <u>Mortimer</u>.  <u>See</u> <u>Avalos</u>, 517
3  F. Supp. 2d at 1161.  As in <u>Avalos</u>, Plaintiff has not provided any
4  analysis in his papers as to why the .06% rate of over-detention is
5  materially different from that which the Court has already declined
6  to find unconstitutional.  In any case, no matter how Plaintiff's
7  counsel frames the class period or the class members, all these
8  incidents of over-detentions occurred less than 1% of the time and,
9  without more, is not significant enough to be evidence of a policy,
10 practice, or custom.  <u>Cf.</u> <u>Thomas v. Baca</u>, 514 F. Supp. 2d. 1201,
11 1214-15 (C.D. Cal. 2007)(finding that 24,000 incidents of forced
12 floor sleeping in jails over the course of four months, which
13 amounted to 5.6% of inmates sleeping on the floor on any given day,
14 was evidence of a custom of forced floor sleeping in violation of
15 inmates' eighth amendment rights).  Moreover, Defendants have
16 provided evidence that the county has an active policy of reducing
17 the number of total over-detentions, and that they successfully
18 integrated programs which dramatically reduced the overall number
19 of over-detentions by 87% between 1997 and 2002, and an additional
20 92% between 2003 and 2004.  (DMSJ at 7-8).  Therefore, <u>Mortimer</u> and
21 <u>Avalos</u> control, and Plaintiff has not shown that Defendants have a
22 policy, practice or custom of over-detaining inmates.[3]

23      B.   <u>ATTORNEYS' FEES</u>

24      Defendants allege that they are entitled to attorneys' fees
25 under 1) 28 U.S.C. § 1927, because Plaintiff's counsel has
26 unreasonably and vexatiously multiplied the proceedings of this

27

28      [3] In light of this Court's decision to grant summary judgment
in favor of Defendants, the court does not reach the issue of
duplicative claims as moot.

1 | case and 2) 42 U.S.C. § 1988, because Plaintiff has maintained this
2 | action in bad faith. (DMSJ at 13, 16.) Defendants argue that
3 | Plaintiff was aware of this Court's previous rulings in <u>Mortimer</u>
4 | and <u>Avalos</u> which determined that the LASD did not have a policy,
5 | practice or custom of over-detaining inmates. (<u>Id.</u> at 14-15.)
6 | Defendants further argue that Plaintiff's counsel has attempted to
7 | make the same argument regarding policy, practice or custom twice
8 | within the last calendar year using the same already-rejected
9 | evidence. (<u>Id.</u> at 17.)

10 | Sanctions under 28 U.S.C. § 1927 are authorized only for the
11 | unreasonable multiplication of proceedings; this provision "applies
12 | only to unnecessary filings and tactics once a lawsuit has begun
13 | ... [and] cannot be applied to an initial pleading." <u>In re Keegan</u>
14 | <u>Mgmt. Co. Sec. Lit.</u>, 78 F.3d 431, 435 (9th Cir. 1996); <u>Zaldivar v.</u>
15 | <u>Los Angeles</u>, 780 F.2d 823, 831 (9th Cir. 1986). Here, Plaintiff's
16 | attorney filed only an original Complaint, and an Amended Complaint
17 | as necessary. He has additionally filed only oppositions and one
18 | submission in reply to Defendants' motions to dismiss. Therefore,
19 | there is no evidence that Plaintiff's attorney had any intent to
20 | unreasonably multiply proceedings.

21 | A prevailing Defendant may receive an award of attorney's fees
22 | under 42 U.S.C. § 1988 "only where the action is found to be
23 | unreasonable, frivolous, meritless or vexatious." <u>Legal Servs. v.</u>
24 | <u>Arnett</u>, 114 F.3d 135, 141 (9th Cir. 1997). Here, Plaintiff has
25 | made a good faith effort to distinguish this case from <u>Mortimer</u> and
26 | <u>Avalos</u>. Plaintiff outlines allegations of unrecorded over-
27 | detentions leading to skewed statistics that Defendants rely on in
28 | <u>Mortimer</u>, and are not unreasonable, frivolous, meritless, or
vexatious. Furthermore, although Plaintiff's counsel is using

9

1    evidence that he has previously presented to this Court, he does

2    make arguments that they should be construed in a different light.

3    Although Plaintiff does not prevail on this claim, there is no

4    evidence that counsel has acted recklessly or in bad faith.

5    Therefore, Defendants are not entitled to attorneys' fees pursuant

6    42 U.S.C. § 1988.

7    **IV.**    **CONCLUSION**

8       Based on the foregoing analysis, the Court GRANTS summary

9    judgment in favor of Defendants Sheriff Leroy Baca, Larry Waldie,

10    Shaun Mathers, Deputy McKnight, and Deputy Laing and DENIES

11    Defendants' request for attorneys' fees.

12

13    IT IS SO ORDERED.

14

15

16    Dated: April 7, 2008

17                                DEAN D. PREGERSON

18                                United States District Judge

19

20

21

22

23

24

25

26

27

28